23-1001 Optical Technologies, LLC v. Nokia Corporation 23-1001 Optical Technologies, LLC v. Nokia Corporation 24-1001 LCN I believe it did, but that's not in the record. What we do know is that at the time that he signed... I'm sorry, maybe I'm still not understanding the question. At the time Dr. Kors signed the invention agreement, the fellowship program existed. Does that answer your question? Yes. Didn't the fellowship require him to be pursuing a course or study that related to the work he did or was intended to work on at TRW? I'm not sure of the exact language, but it basically required him to pursue a degree that was in the general area that he was working in. He pursued a degree in electrical engineering. He told TRW what he was going to do, and that's what he did. That satisfied TRW's requirement. The district court, however, in Section 2870, there are two additional requirements that really encapsulate this whole benefit idea. That's where the California legislature addresses benefit. Those two requirements are that if TRW is to get the invention, then the course of study has to be related to work for TRW or an area of research that TRW is interested in. That's one. Then the second thing that is also required is that the invention relate to work that the employee did for the employer, that Dr. Korb did for TRW. Which is an issue which hasn't been resolved. The district court said there was a genuine issue. The court said there was a genuine issue essentially on the benefit element here. In fact, the interesting thing is that that was what the parties focused on in the summary judgment in this case. The parties spent the vast majority of the briefing on this issue of whether the invention related to Dr. Korb's work. Dr. Korb invented a fiber optic receiver. Dr. Korb's work at TRW had to do with RF satellites. The district court's decision probably spent 20 pages or so analyzing all the evidence, the various declarations from all the parties, and said there's a tribal issue of fact on whether the invention of the fiber optic receiver relates to Dr. Korb's work for TRW. So both sides here seem to say, well, the language of the agreement is clear my way. Suppose that we were to conclude that the agreement's not clear, that it's ambiguous, then I suppose it would become relevant that TRW for 22 years never claimed the invention, and maybe there's information about industry practice, about whether companies view inventions developed under these tuition programs to belong to them under similar language. I mean, isn't there a possibility of making a fuller record here which would inform the meaning of own time under this agreement? I think there is. The one thing that we are all in agreement on, even the defendants, is that the district court should not have just relied on the Deming case and said that own time means scope of employment for purposes of workers' compensation. If this court were to find that there was an issue of fact and that a more fulsome record could be developed below because there's an ambiguity in own time, then it does need to be remanded because essentially what the district court did was construe this agreement on summary judgment against Dr. Corr. So one issue that I guess that that raised for me is embodied in the footnote. Was it page 13, appendix 13, footnote? Yes, footnote 12 where the court says, except as to another portion of this agreement, you did not urge that there was ambiguity in this. And so we just don't. I take this to be a point that any question about the ambiguity of own time was simply not preserved by you. Well, we argued below that own time had a plain and ordinary meaning, that the court could construe it as or could apply it under the facts of this case as a matter of law because TRW did not find it. If you go back to the Cupid case, we... I understand what argument you're making. You don't need to repeat it in response to my question about whether a contention that this was ambiguous and therefore various facts could help resolve the ambiguity was forfeited. But the way we said that the term could be applied as a matter of law, but that if the court found that there was an ambiguity, that the facts could not be... We said that at... You know, I said it with the kind of specificity that would count. As to this element of the agreement, I think the district court said you did make a point about what I think the court labeled the third requirement, which is not this one. The third is the A or B requirement. Our brief, Your Honor, was raised in our reply brief when the defendants raised facts. We said in our opening brief this can be determined as a matter of law in our brief because own time has a plain and ordinary meaning and there is nothing in the invention agreement about the payment of tuition or under California law. The defendants then in their opposition brief said, well, there are all these facts. And in our reply brief, we said... First, they agreed with us, by the way, that it could be determined... I'm just confused about something. Isn't this their motion? No, this was our... Yeah, you're right. This was their motion for summary judgment. So in our opposition brief, we... In fact, in our opposition brief, we said this would be... We agreed that this could be determined as a matter of law. In other places in our brief, we talked about facts. We didn't specifically say... At the end of our brief, we said to the extent that the court finds any of these provisions, including own time, benefit to the employer, relates to or arises out of the scope of the work, that a trial needs to be had on the facts. Yeah, but I'm not... I guess I'm a little puzzled as to how we could have a forfeiture here of both parties. Are you plain and ordinary meaning? And we decide that both parties are wrong. What are we supposed to do? I mean, don't we have to, under those circumstances, send it back for a determination of how it comes out, given the ambiguity that we found in it? I think so, because under California law, whether a... It's a little bit circular, but under California law, if a contract provision is found to be ambiguous, then facts are needed. So both parties can say, we don't think that there's any ambiguity. An appellate court or a trial court can say, no, there is an ambiguity and we need to have a trial on that ambiguity. That's my understanding of how California law works on that point. Going back to Cubic, I think that the important... Cubic really answers this question, though, as a matter of law, because in Cubic, you had... And I see my time is expiring, but just quickly, in Cubic, there was a manuscript that everybody agreed was done on the employer's own time. And then there was the additional work that... I'm sorry, done on the employee's own time. And then there was additional work that was necessary to... for the patent, for the invention, and that was where... But the facts are different from the facts here, clearly. The facts are very different. They're different enough, but you don't have to explain that the facts are different. The point, though, is that what the employer funded in Cubic to make the invention belong to the employer was the funding of the invention. The employer told the employees, this is an interesting idea in a manuscript, which the employee developed on his own time. We want to turn this into an invention, and here are the resources necessary to do that, including the payment of wages for the employees to do that and to refine the invention so a patent... Yeah, but I don't think Cubic is deciding the question of what happens if that extra element wasn't present. The court didn't say, save for the use of the company resources, the employee would have won. I think that that was implied in the decision, because the employer did say that... Well, the court did say that the development of the manuscript happened on the employee's own time because the employer didn't pay any wages for the employee to develop that manuscript and didn't devote any resources to the development of the manuscript and didn't assign the development of the manuscript. Okay. I think we're out of time. We'll give you two minutes for rebuttal. Ms. Coburn? Good morning, Your Honors, and may it please the Court. So if I understand your position that when an employee is participating in this tuition assistance program, he or she has no own time. Any time he works on an invention is not his own time. Isn't that true? That is not our position, Your Honor. Why is it not your position? Because if he's working on a regular schedule at TRW and that doesn't include nights, so at night he could work on his own invention and that would be on his own time, right? But this guy, because he's in the tuition program, has no own time. And he could do it at night, he could do it in the middle of the night. As long as he's doing it, it belongs to the employer, right? No, I'm going to take you with a couple of things in that description. First of all, there's no dispute about where and when this employee was when he worked on this invention. He worked on it at UC Irvine in July. Okay, but you're not addressing my question. I understand. Why isn't every minute of the day not his own time under your theory? Minutes of the day where he is not working on his fellowship. It wasn't a tuition program, it was a fellowship. So when he was working on his PhD, which is... So he never had his own time. How can he have... What period of the day is his own time under your theory? If he was at home at night inventing a blender that had nothing to do with his PhD. No, no, you're mixing two things. If he's at home working on this project, any time he's working on it is the employer's time, right? Any time. I think I see where you're disagreeing, Your Honor, and it has to do with the word entirely. So the argument you heard just now and the argument in the brief suggested that there were only two words that matter in this case, own time. There are actually five words that matter in this case, entirely, on his own time. So if we could agree, for example, that time spent doing business hours, and I think it goes beyond this, that time spent during business hours, time that TRW freed him up from working on site so that he could pursue a PhD as a TRW fellow and they could pay him and compensate him for that work, for his PhD work, even if only a portion of the time he spent on his PhD was TRW's time, that would be enough to trigger this provision and show that he was assigned. There's no evidence of what time of day he did the work, right? Well, I think he concedes that his PhD program included class work. He concedes that his PhD program included work at the UC Irvine Library. And the whole point, from TRW's perspective... But is it not the case that any time he's working on this invention is not his own time, under your theory? Whether it's in the middle of the night, after normal working hours, it doesn't make any difference when he did it. As long as he was doing it, it's not his own time. Our position does not rest solely on those two words, Your Honor. Our position rests on the five words. Our position is that in order for this to be his invention, it would have to be entirely on his own time. Dr. Corr has never confirmed it in this case. But there's no own time. He doesn't have any own time. He has lots of own time. He's on the PhD program. As long as he's working on this invention, that's not entirely his own time. So I actually think the law would support that view, but I don't think the court has to go that far. That's my answer. I think the law would support that view. Because there is no dispute here, unlike in some of the other cases you heard about, that there's no dispute about where he was, what he was doing, or when. He invented this device in his PhD work. It was 100% in his PhD work. And TRW paid for his PhD work 100%. So at a minimum, some portion, some portion, of the time he spent on his PhD work had to have been TRW's time. The court doesn't have to go so far as to say that every minute of his life was TRW's time, and there's no reason to do that. It doesn't have to say that, but it does have to say any time he's working on this is not his own time. That is our position, Your Honor. And if you think about the amount of time he spent, he says he spent about 5,000 hours over the course of four years. That comes out, if you average it out to about three business days a week, roughly corresponds, actually, with the two business days, or one or two business days that he was asked to continue in his full-time job. So the effect of this is that somebody who's in this PhD program never can rely on this provision about own time because he never has any own time. What's the point of having this provision in the agreement if there's no own time, ever? Your Honor, there's several different parts of this agreement. If he could show, and the provision in the agreement is based on 2870. It's actually a little bit more employee-friendly than the current version of 2870. But we would contend that this was not entirely his own time, and that's because he was compensated. I don't think there's any unfairness in this position either, Your Honor, if you think about it. So Dr. Cole admits he would have applied for this PhD program, but that's not all he did. He could have paid for it himself. But instead what he did is he showed up to TRW and he said, I want to be a TRW fellow. And the TRW Fellowship Program required that the course of study be related to the company's business. I'm not talking about related to as part of a legal test. I'm talking about the requirement of the Fellowship Program was that this course of study relate. The requirement of the Fellowship Program is that he have a sponsor on-site at TRW to whom he reported about his studies. And at minimum, the time he spent reporting to his supervisor at TRW about his studies was not his own time, at a minimum. But we submit that the time he spent in his Fellowship Program as a TRW fellow pursuing this research and doing this work was not entirely his own time. He was paid a stipend. And I heard a little bit about the stipend a minute ago as if it was just food assistance or something. I don't think a few thousand dollars a month would meet that test. But in any event, this was time spent. This was a compensation for the time he spent working on his Ph.D. Don't you think it's sort of odd that they have these invention agreements that they coexist with these tuition assistance programs and that there's no reference to the tuition assistance program in the invention agreement? Your Honor, it's conceded in this case that there was reiteration in writing that the invention agreement would continue to apply during the Fellowship Program. I'm talking about the drafting of the agreement. It seems kind of odd that people know about the tuition assistance program when they're drafting the invention agreement when it's presented to this individual, to CORE. The company knows about the tuition assistance program. It seems odd that they didn't take account of that with specific language in the invention agreement. Doesn't it seem odd? It doesn't seem odd to me, Your Honor, because this was not a tuition assistance program. This was not like whatever you want to call it. There's no reference to it. That's right, because it was a special program that you had to apply for and get credit for and get approval for based on the content of your studies. But if you were advising a company and they had this, what do you want to call the program? Fellowship program. They had this fellowship. Wouldn't you want to say, okay, we've got a lack of clarity here in the invention agreement as to whether inventions that are made in the Fellowship Program are our property or the employee's property. We better take account of that in writing the agreement. Don't you think that normally an employer would think that way? I certainly think if an employer might think that way. If I were advising an employer, maybe I would advise them to do that. But that doesn't make the agreements as they stand legally ambiguous. And to the ambiguity point, Your Honor mentioned this issue, we do think that this issue is forfeited. I understand your view, what if you disagree. But in order to have evidence. How can we affirm if we say you're wrong and the agreement is ambiguous? How can we affirm? Your Honor, there is note that the plaintiffs here have not come forward with any admissible evidence on the topic of any admissible extrinsic evidence that would inform the understanding of this term. That we did not make this argument. 22 years and TRW says nothing about it? That's not extrinsic evidence? That's not, Your Honor. Proper extrinsic evidence admissible under California law is communications, generally in writing, conveyed at the time the contract was entered into. So what we would need for a proper extrinsic evidence. Hold on a second. I thought that in California, as well as in the restatement and every other contract jurisdiction that I'm aware of, that the party's conduct with respect to the agreement is important extrinsic evidence in interpreting. And we have very clear evidence of TRW's perspective on this issue, which is without any interest in this case. They are not a party to this case. And yet they put in a declaration saying, yes, it is ours. 22 years later. Yes, and do you know why? Because this invention isn't worth anything. Because this invention is about cross-polarization interference cancellation. It doesn't explain how to cancel the cross-polarization interference. It simply says, boy, someone should do that. The claims of the patent don't provide much information. So as we would show if we ever got to trial on the ultimate patent infringement claim here, this patent is not worth anything. And the only reason there's been a license about it is because the plaintiffs have wielded this patent in litigation, extracted settlements without ever litigating their ownership. So the fact that TRW for however many years did not sue to secure rights to this patent could tell us a number of things. First of all, it could tell us that they believe that their agreement is clear. They believe that they do not have to sue in order to secure their ownership rights. All they have to do is rely on the terms of their agreement. Second, it is equally prohibitive of the idea that TRW thinks that this investment, this patent wasn't worth an investment of time and money from TRW to claim the rights. The fact that they didn't think it was worth pursuing doesn't mean that they believe their agreement was ambiguous. Okay, but that's an argument to be made at trial in response to their argument that the parties acted as though this wasn't subject to the agreement. But it doesn't seem to me that we can sit here and say, oh, well, the agreement, the invention was worthless, so there's no extrinsic evidence. I don't think the court can. My point, Your Honor, is simply that when we were before the district court, in response to our motion for summary judgment, the plaintiffs did not come forward, as is their burden, with any admissible extrinsic evidence that would show that this, that would inform the meaning of this contract. That was their burden. And whether they forfeited or didn't forfeit the argument, they had a burden to come forward with that admissible extrinsic evidence, and they did not do so. And for that reason, What's inadmissible about the 22 years of silence? It's not prohibitive of the ultimate question, which is interpretation of the agreement. Because? Because it is equally prohibitive of many, many other things, including that they just didn't want to spend the money on this invention. Why would they litigate this invention? I'm simply explaining why. Of course, we're speculating about this, because the plaintiffs didn't come forward with extrinsic evidence and did not argue that the agreement was ambiguous in the district court. Let's assume that no argument about ambiguity was presented. And let's assume, I'm just talking hypothetically now, that there was no evidence of the sort that is admissible for the resolution of ambiguity. But the two parties are in front of the district court, and each one says this unambiguously means one says X and one says Y. And the district court says, I don't think it unambiguously means X. I don't think it unambiguously means Y. What's the district court supposed to do? So what the district court is supposed to do and what the district court did is analogize from case law. And we agree here today, I think you heard from my colleague this morning, at that point, is the district court obliged to determine the best meaning as a matter of law of these words? Yes. And can't say or shouldn't say, I don't think it has an unambiguous meaning, motion denied. I don't think, no, I think the question before the court, and so to be clear, this is not a jury issue. This is a court issue because we're talking about standing. So this is not an issue to which the Seventh Amendment would attach. There would be no jury trial on this issue. So what the district court would be obliged to do would be to decide what the term means. And if there is no admissible extrinsic evidence, then he has to just do the best he can. But if I may, Your Honor, I think what I heard today was that the parties don't actually disagree very much about what the words mean, except for the fact that my colleague ignores the word entirely. The parties don't disagree very much. What I saw in the briefs was that the plaintiff said own time is everything that isn't compensated. It's all the time that isn't compensated. He modified that a little bit today and said all the time that isn't compensated with wages. Well, I'm not aware of any case law that says that all time a person spends when they're not receiving a wage for an hour is his own personal free time. I'm not aware of any case law that says that. And in fact, of course, this employee was never an hourly employee. He was a salaried employee. His wages, to the extent his salary was a wage, his salary was prorated to reflect the fact that some of his time was going to be compensated with salary and some of his time was going to be compensated with tuition, benefits, and a stipend, all of which are taxable compensation under California and federal law. And we've cited cases about that that show that payments of tuition, payments of a stipend, payments of benefits, all of these things are taxable compensation to the employee. The fact that you enjoy the benefits of your medical coverage, for example, on a Saturday afternoon doesn't mean everything you do on a Saturday afternoon is within the scope of your employment. But it is true that here, in order to get these benefits of tuition,  Dr. Korb had to go to school. And he was given a tuition. I think we're about out of time. Must my colleagues have any further questions? Okay. Thank you. Thank you. Mr. Hadley has two minutes. One of the first points I'd like to address is this word entirely. The undisputed evidence in the record shows that Dr. Korb was not paid for a single hour that he devoted to his Ph.D. work and the development of his Ph.D. thesis. So there is no evidence whatsoever that he was compensated, he was paid wages for any of that. In fact, he had to record... Well, it depends on whether the fellowship stipend and tuition is payment or not. I don't know. I mean, you're... I'm referring to the payment. And in terms of the stipend and the benefits, whether that goes to compensation or not is irrelevant. Under the cases of this court, including In re Appalach and the California cubic case, there's no question that the employees in those cases, when they did things on their own time, were receiving medical benefits and other types of benefits as well. Whether it's taxable or not doesn't matter because the courts in those cases still found that employees were acting on their own time for certain activities. If the payment of these kinds of fringe benefits, whether it's a stipend so you can go to school, whether it's a medical benefit, whether it's pension funding or anything else, if those converted all of an employee's time into the employer's time, there wouldn't be a Section 2870 and there wouldn't be an invention agreement. Employers would simply get every invention that the employee did as long as they were getting some sort of fringe benefit. And then the other statement that was made was that TRW paid for some of the PhD work, and that's not correct. What they paid for was the tuition and the stipend and the other fringe benefits, the continued medical assistance that every employee gets, whether they're under the invention agreement or not. I think we're about out of time. Thank you. I think that's all the cases submitted.